750 F.2d 838
 MERCANTILE BANK & TRUST CO., LTD., Plaintiff
Counter-Defendant-Appellant,
v.
FIDELITY AND DEPOSIT COMPANY, etc., Defendant Counter-Claimant,
v.
UNITED STATES of America, Counter Defendant-Appellee,
and
International Energy Corporation, et al., Counter-Defendants.
 No. 83-3707.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 15, 1985.
 
 Michael J. Sheahan, Gene H. Godbold, Orlando, Fla., for plaintiff counter-defendant-appellant.
 Kendall Wherry, Asst. U.S. Atty., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., Carleton D. Powell, Mary L. Fahey, John A. Dudeck, Jr., Tax Div., U.S. Dept. of Justice, Washington, D.C., for counter defendant-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HATCHETT and CLARK, Circuit Judges, and STAFFORD*, District Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 This case involves a dispute between parties as to the right of possession and ownership of a collateral deposit fund of $41,131.69. The district court, through summary judgment, awarded the fund to the United States. We affirm.
 
 Facts
 
 2
 International Energy Corporation (IEC) is a Kentucky corporation engaged in strip mining in the Commonwealth of Kentucky. Sometime prior to July, 1975, Frank G. Finkbeiner agreed to sublease to IEC the Crabtree Lease located in St. Charles Quandrangle, Hopkins County, Kentucky. On July 23, 1975, IEC, John B. Hargis, Jr., Dell M. Hargis, and Dewitt F. Sadler entered into an agreement with Finkbeiner, as "trustee" for IEC, through which Finkbeiner agreed to furnish a reclamation bond as required by the Department of Reclamation, Commonwealth of Kentucky. The $50,000 reclamation bond would cover the initial 50 acres of land subjected to strip mining.
 
 
 3
 In exchange for Finkbeiner's promise, IEC agreed to use its "best efforts" to commence and maintain a successful strip mining operation. Moreover, IEC's stockholders, John B. Hargis, Jr., Dell M. Hargis, and Dewitt F. Sadler, agreed to place their stock in an escrow account for Finkbeiner's benefit until a minimum of 100,000 tons of coal had been stripped and sold from the Crabtree Lease. Prior to the sale of the coal, John B. Hargis and Sadler each agreed to receive compensation of no more than $1,000 per month. The written agreement provided that the duties and responsibilities of the parties were not assignable and would become null and void after sale of the first 100,000 tons of coal.
 
 
 4
 On July 25, 1975, IEC applied for a permit to strip mine the fifty acres of the Crabtree Lease. As a prerequisite to receiving the permit, the Commonwealth of Kentucky required IEC to post a reclamation bond of $50,000. To obtain the reclamation bond, IEC submitted an Application for Miscellaneous Bonds to Fidelity. The application listed John B. Hargis, Jr. as president and Dewitt F. Sadler as secretary-treasurer of IEC. Hargis and Sadler signed the application on behalf of IEC and personally agreed to indemnify Fidelity. Frank G. Finkbeiner did not sign the application, but he was listed as a business reference.
 
 
 5
 As security for issuance of the reclamation bond, Fidelity required the deposit of $50,000. By order of Mercantile Bank and Trust Company (Mercantile), the First National Bank of Miami issued its letter of credit authorizing Fidelity to draw upon it "by order of Mercantile Bank and Trust, Freeport--under their credit number 2271 and for the account of International Energy Corp., St. Charles, Kentucky, up to an aggregate amount of * *Fifty Thousand and No/100 U.S. Dollars* * available by your drafts at sight * * *." The letter of credit was valid until July 22, 1976, and was subject to automatic renewal unless First National Bank of Miami notified Fidelity that it did not intend to renew the letter at least thirty days prior to the expiration date. On July 25, 1975, Fidelity issued the reclamation bond in favor of the Commonwealth of Kentucky securing the obligations of IEC in the strip mining operations.
 
 
 6
 On August 4, 1975, IEC and Fidelity executed a collateral agreement which specified that the aforementioned letter of credit was deposited as security for the reclamation bond. Under the agreement, Fidelity acknowledged receipt of the letter of credit for $50,000 from the First National Bank of Miami for the account of IEC. The agreement listed IEC as the owner and principal of the collateral. John B. Hargis, Jr., as president of IEC, and Frank G. Finkbeiner, as assistant secretary-treasurer, signed the collateral agreement on behalf of IEC.
 
 
 7
 Soon thereafter, the First National Bank of Miami (now Southeast First National Bank of Miami) informed Fidelity that the letter of credit would not be extended beyond the original expiration date of July 22, 1976. In accordance with this notification, Fidelity timely drew on the letter and received $50,000 from First National Bank of Miami.
 
 
 8
 While these banking activities were occurring, IEC was strip mining the Crabtree Lease, but failed to pay its federal social security and unemployment taxes. The Internal Revenue Service (United States), therefore, assessed IEC for $63,190 in social security and unemployment taxes. Subsequently, the United States served on Fidelity a Notice of Levy which stated that all property, right to property, monies, credits, and bank deposits in Fidelity's possession belonging to IEC were levied upon and seized by the United States.
 
 
 9
 In 1977, IEC completed the strip mining of the Crabtree Lease, and, in accordance with the reclamation bond, Fidelity, as surety for IEC, paid the Commonwealth of Kentucky $9,000. Fidelity retained the balance of $41,131.69.
 
 
 10
 Earlier, in November, 1976, Finkbeiner signed an affidavit stating that he was the subleaser of the property mined by IEC and that under an agreement with Hargis, Sadler, and IEC, Finkbeiner, through his efforts alone, secured the reclamation bond. Finkbeiner also stated that the assets of IEC were pledged to him and that he had always been the true and lawful owner of any and all collateral pledged for the issuance of the reclamation bond.
 
 
 11
 Later, Finkbeiner entered into an agreement with Mercantile under which Finkbeiner assigned all claims, demands, actions, or rights of actions he had against Fidelity to Mercantile. In doing so, Finkbeiner stated that Mercantile "actually funded $50,000 in cash which is being held by Fidelity * * * as security for said Reclamation Bond, which funds, or any part thereof remaining, are the property of the Assignee." Fidelity received a copy of this affidavit.
 
 
 12
 The United States, thereafter, determined that President Hargis was the official responsible for the payment of IEC's social security and unemployment taxes. In an effort to pay IEC's expenses and taxes, Hargis assigned his interest in the proceeds of the reclamation bond, individually and as president of IEC, to the United States.
 
 Procedural History
 
 13
 These proceedings were initiated by Mercantile in the Circuit Court of the Ninth Judicial Circuit for Orange County, Florida. Mercantile sought a court order for possession and ownership of the collateral deposit fund which was in the original principal amount of $50,000. This lawsuit was removed to the United States District Court, and Fidelity filed its answer and a counterclaim for interpleader. Fidelity joined as counter-defendants Mercantile, IEC, the United States of America, Finkbeiner, and the Commonwealth of Kentucky. All of these counter-defendants were claimants to the collateral deposit.
 
 
 14
 In response to the interpleader action, Finkbeiner filed a disclaimer of interest. In this pleading, Finkbeiner disclaimed all interest in the collateral deposit fund and affirmed that his interest in said fund was for and on behalf of Mercantile. The other parties filed responsive pleadings. The Clerk of the United States District Court entered a default against IEC. Subsequently, the court discharged Fidelity as a party to this action.
 
 
 15
 Thereafter, IEC and John B. Hargis moved to intervene and to file an answer to Mercantile's initial complaint. In response, the district court entered an order permitting the intervention of Hargis. Both Mercantile and the United States of America filed motions for summary judgment. The district court entered a Memorandum Opinion granting the United States's (government's) motion for summary judgment and ordering that the interpleaded funds be paid to the United States. From this adverse ruling, Mercantile appeals.
 
 Issue
 
 16
 The sole issue on appeal is whether the district court erred in granting the government's motion for summary judgment.
 
 Discussion
 
 17
 Appellant, Mercantile Bank and Trust Company, Ltd., contends that the district court erred in its determination that no genuine issue of material fact exists as to the ownership of the collateral deposit funds interpleaded in this action. We must independently review the district court's order granting summary judgment and determine whether any genuine issue of material fact exists. Fed.R.Civ.P. 56(c); Morrison v. Washington County, Alabama, 700 F.2d 678 (11th Cir.1983). When we examine a decision granting or denying summary judgment, we apply the same legal standards that control the district court's determination. Environmental Defense Fund v. Marsh, 651 F.2d 983, 991 (5th Cir.1981).
 
 
 18
 A party seeking summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact in the case. Adickes v. S.H. Kress and Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Clemons v. Dougherty County, Georgia, 684 F.2d 1365 (11th Cir.1982). In determining whether a movant has met this burden, we review the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Adickes, 398 U.S. at 157, 90 S.Ct. at 1608. All reasonable doubts about the facts are resolved in favor of the non-movant. Casey Enterprises v. Am. Hardware Mutual Insurance Co., 655 F.2d 598, 602 (5th Cir.1981). If reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny summary judgment. Impossible Electronics Techniques, Inc. v. Wackenhut Protective System, Inc., 669 F.2d 1026, 1031 (5th Cir. Unit B 1982); Croley v. Matson Navigation Co., 434 F.2d 73, 75 (5th Cir.1970).
 
 
 19
 Mercantile argues that a genuine issue of material fact exists regarding the ownership and right to payment of the collateral deposit funds. Thorough review of the record refutes this contention. The record reveals that Finkbeiner, as trustee for IEC, agreed to furnish a reclamation bond in the amount of $50,000 to facilitate IEC's strip mining operations. As a result of Finkbeiner's negotiations, as trustee for IEC, First National Bank of Miami issued a letter of straight irrevocable credit to Fidelity. First National issued the letter on orders from Mercantile for the "account of International Energy Corporation." Thus, the letter of credit identified IEC as the recipient of $50,000 of straight line credit.
 
 
 20
 Relying on the letter of credit, Fidelity issued the reclamation bond in favor of the Commonwealth of Kentucky securing the obligations of IEC in its strip mining operations. John B. Hargis, Jr., as president of IEC, signed the reclamation bond.
 
 
 21
 In addition, the collateral agreement provided that proceeds from the letter of credit were to be used to sustain any expenses, damages, loss, costs, attorney's fees, or liability secured by the bond. In a letter dated July 18, 1976, the First National Bank of Miami informed Fidelity that the letter of credit, for the account of IEC, would not be extended beyond its expiration date. Pursuant to the surety agreement, Fidelity paid the Commonwealth of Kentucky $9,000 to satisfy its reclamation bond obligations. The remainder of the bond proceeds after the reduction of costs and attorney's fees, was placed in escrow, for the "owner," by order of the district court.
 
 
 22
 The record declares that IEC entered into a collateral agreement with Fidelity, and that IEC is the "owner" of the collateral in question. The president of IEC, John B. Hargis, Jr., and the cashier of Fidelity, Jose F. Lacret, signed this collateral agreement. These subscriptions were attested to and are not at issue.
 
 
 23
 In sum, the facts of this case reveal that Finkbeiner was a trustee of IEC, and as such, caused Mercantile to issue a letter of credit to Fidelity for IEC's account. The letter of credit, the surety bond, and the collateral agreement all indicate that IEC is the owner of the letter of credit and, thus, the collateral deposit. Mercantile did not produce a scintilla of evidence to substantiate its claim that Finkbeiner acted as its agent or had any rights to the collateral deposit. The district court, therefore, correctly concluded that Finkbeiner had no ownership rights in the collateral deposit to assign to Mercantile. Likewise, Mercantile had no independent claim based on termination of the bond obligation. If Mercantile has a cause of action, it does not lie against Fidelity for the present collateral deposit fund.
 
 
 24
 We agree with the district court that the state of Kentucky, by failing to obtain a judgment, did not perfect its lien pursuant to its own statute (Ky.Rev.Stat. 426.030).
 
 Conclusion
 
 25
 We hold (1) that the district court did not err in finding that the Commonwealth of Kentucky had not perfected its lien; (2) that IEC is the owner of the collateral deposit in question; and (3) that IEC assigned, to the Internal Revenue Service, its interest in the proceeds of the reclamation bond.
 
 
 26
 The district court correctly concluded that no genuine issue of material fact exists as to the ownership of the collateral deposit and that the government is entitled to judgment as a matter of law.
 
 
 27
 AFFIRMED.
 
 CLARK, Circuit Judge, dissenting:
 
 28
 Summary judgment is a drastic remedy that should not be granted unless it is clear that the non-moving party is not entitled to recover under any circumstances. Because the majority has approved a grant of summary judgment in the face of genuine issues of fact, I must dissent.
 
 
 29
 The majority's first error occurs from its assumption that Frank Finkbeiner was the Trustee for IEC. Contrary to the majority's conclusion, the record does not reveal that Finkbeiner, as Trustee for IEC, agreed to furnish the reclamation bond. See Majority Opinion, at 842. See pages 843-44 infra for discussion of relationship of contracting parties. The July 23, 1975 agreement between John Hargis, Dewitt Sadler, and Frank Finkbeiner was the only document in which the reclamation bond was discussed. However, the agreement did not mention that Frank Finkbeiner was a Trustee for either IEC or Mercantile.[1]
 
 
 30
 The majority also concluded that Mercantile did not produce "a scintilla of evidence to substantiate its claim that Finkbeiner acted as its agent or had any rights to the collateral deposit." Majority Opinion, at 842. I disagree. There is evidence in the record that IEC was never the owner of the collateral deposit funds. Finkbeiner's affidavit,[2] the assignment from Finkbeiner to Mercantile,[3] and the Disclaimer of Interest executed by Finkbeiner,[4] all raise genuine issues of fact regarding the ownership of the collateral deposit fund and whether Finkbeiner was the owner of the fund when he made the assignment to Mercantile.
 
 
 31
 The record is not sufficient to determine the true owner of the collateral deposit funds. Because Fidelity required a $50,000 deposit before it would issue the reclamation bond, Mercantile Bank deposited $50,000 with the First National Bank of Miami so that a letter of credit securing the obligation could issue. Fidelity drew on that letter of credit and received the $50,000. There is not an iota of evidence in the record to demonstrate that IEC, who did not participate in obtaining the funds to secure the letter of credit, had any right or title to the funds.[5] This is a genuine issue of fact which can only be resolved by further development of the record.
 
 
 32
 Finkbeiner was the leasee of the Crabtree coal mining strip in Hopkins County, Kentucky. In the agreement, he sublet the lease to IEC and was to receive royalties from the coal mined by IEC. IEC was to be the operator. It is obvious from the agreement that the trustee had the lease, equipment, and capital to provide for acquisition of other equipment in which the trustee would have a security interest, and that IEC was supposed to have the operating know-how. This blend, if successful, would have provided royalties on coal to be shared by the parties, dealing at arm's length.
 
 
 33
 The majority errs in assuming that Finkbeiner's $50,000 was a capital contribution or loan to IEC. Finkbeiner agreed to furnish a bond running to the State of Kentucky, a commitment he fulfilled. When the collateral was no longer needed to guarantee the bond, the fund reverted to Finkbeiner, as trustee. This is supported by other portions of the agreement which establish that Finkbeiner had a security interest in the stock of IEC to guarantee IEC's contractual commitments. Thus, it cannot be concluded, as did the district court and the majority, that Finkbeiner was trustee for IEC.
 
 
 34
 Summary judgment is a useful device, however, if it is not used with caution, it inevitably leads to drastic results. See Murrell v. Bennett, 615 F.2d 306, 309 (5th Cir.1980). Mercantile's burden in responding to the summary judgment motion was to offer significant probative evidence that tended to support its complaint. See Pan-Islamic Trade Corp. v. Exxon, 632 F.2d 539, 554 (5th Cir.1980), cert. denied, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). Mercantile met its burden. Because this case should have been remanded to the district court for further development of the record, I must dissent.
 
 
 
 *
 Honorable William H. Stafford, Jr., Chief Judge, U.S. District Court for the Northern District of Florida, sitting by designation
 
 
 [1]
 The agreement, which was signed by the parties and by Frank Finkbeiner as Trustee, provided in pertinent part:
 This AGREEMENT ... by and between INTERNATIONAL ENERGY CORPORATION ... JOHN B. HARGIS, JR., DELL B. HARGIS and DEWITT F. SADLER, hereinafter referred to as "Stockholders" and FRANK G. FINKBEINER, TRUSTEE, hereinafter referred to as "Trustee."
 [T]he parties hereto agree as follows:
 
 
 [1]
 Assistance By "Trustee". To assist in the commencement of strip mining operations on said Crabtree Lease, the "Trustee" hereby agrees to make available to the "Corporation" goods and cash, the total value of which altogether will not exceed Two Hundred Thousand Dollars
 * * *
 Additionally, "Trustee" will furnish a Reclamation Bond as required by the Department of Reclamation, Commonwealth of Kentucky, said bond to be in the amount of ... ($50,000.00), which will cover the initial fifty (50) acres of land to be permitted for strip mining operations.
 
 
 [2]
 See Majority Opinion, at 840 (substance of Finkbeiner's affidavit)
 
 
 [3]
 The October 17, 1979 document, between Finkbeiner as Trustee and Assignor and Mercantile as Assignee, provided in part:
 [IEC] never had any ownership or possession of the funds used as collateral for the issuance of the ... Reclamation Bond, and that the funds being held as collateral ... never comprised an asset of said [IEC] nor has [IEC] ever claimed ownership of said collateral.
 Mercantile ... actually funded $50,000.00 in cash which is being held by Fidelity ... as security for said Reclamation Bond, which funds, or any part thereof remaining, are the property of ... Mercantile.
 
 
 [4]
 The Disclaimer of Interest provided in part:
 The only interest claimed by Frank G. Finkbeiner, Trustee, in and to the subject matter of this lawsuit (i.e., a $50,000.00 surety bond issued by Fidelity and Deposit Company of Maryland) was on behalf of Mercantile Bank and Trust Co., Ltd., (In Liquidation), the beneficial owner of the collateral deposited with said Fidelity and Deposit Company of Maryland.
 Mercantile Bank and Trust Co., Ltd., (In Liquidation), is the plaintiff in this lawsuit, and is seeking to recover the collateral owned by it and placed in the hands of or for the benefit of defendant Fidelity and Deposit Company of Maryland.
 Frank G. Finkbeiner, Trustee, has no interest in the outcome of this litigation, since his interest in and to the collateral was solely for the benefit of Plaintiff (Mercantile).
 
 
 [5]
 The sole purpose of the letter of credit was to enable IEC to obtain the bond that had to run to the State of Kentucky. Obviously, IEC had to apply to Fidelity for the bond and thus executed the collateral agreement with Fidelity discussed on page 9 of the majority opinion. In saying that it was furnishing the $50,000 letter of credit to Fidelity as collateral for the bond, IEC could not vest title to the letter of credit in itself. The majority gives too much significance to this document and fails to consider the contract in which Finkbeiner agreed to put up the $50,000 for the bond. That he did so through Mercantile is shown by his affidavit, and is not controverted by the government