25 F.3d 1551
 Fed. Sec. L. Rep. P 98,327
Dorothy G. TWISS and Armin R. Twiss, Plaintiffs-Appellants,
v.
David J. KURY, Kury Financial Planning Group, Inc.,
Associated Planners Securities Group, American
Capital Equities Corp., Robert E.
Hillard, Prudential-Bache
Securities Corp., Defendants,
Shearson Lehman Hutton, Inc., Defendant-Appellee.
Martha P. SANDERS, Plaintiff-Appellant,
v.
David J. KURY, Kury Financial Planning Group, Inc.,
Associated Planners Securities Group, American
Capital Equities Corp., Robert E.
Hillard, Prudential-Bache
Securities Corp., Defendants,
Shearson Lehman Hutton, Inc., Defendant-Appellee.
James R. ADDONIZIO, Plaintiff-Appellant,
v.
David J. KURY, Kury Financial Planning Group, Inc.,
Associated Planners Securities Group, American
Capital Equities Corp., Robert E.
Hillard, Prudential-Bache
Securities Corp., Defendants,
Shearson Lehman Hutton, Inc., Defendant-Appellee.
Jeffrey B. MILLER, Plaintiff-Appellant,
v.
David J. KURY, Kury Financial Planning Group, Inc.,
Associated Planners Securities Group, American
Capital Equities Corp., Robert E.
Hillard, Prudential-Bache
Securities Corp., Defendants,
Shearson Lehman Hutton, Inc., Defendant-Appellee.
J. Letcher LAMKIN, Plaintiff-Appellant,
v.
David J. KURY, Kury Financial Planning Group, Inc.,
Associated Planners Securities Group, American
Capital Equities Corp., Robert E.
Hillard, Prudential-Bache
Securities Corp., Defendants,
Shearson Lehman Hutton, Inc., Defendant-Appellee.
David O. STEFL and Patricia A. Stefl, Plaintiffs-Appellants,
v.
David J. KURY, Kury Financial Planning Group, Inc.,
Associated Planners Securities Group, American
Capital Equities Corp., Robert E.
Hillard, Prudential-Bache
Securities Corp., Defendants,
Shearson Lehman Hutton, Inc., Defendant-Appellee,
Mary M. Warner, Plaintiff.
 No. 92-2475.
 United States Court of Appeals,
Eleventh Circuit.
 July 20, 1994.
 
 1
 H. Michael Madsen, John G. Crabtree, Tallahassee, FL, for appellant.
 
 
 2
 Nicholas V. Pulignano, Jr., Jacksonville, FL, for appellee.
 
 
 3
 Appeal from the United States District Court for the Northern District of Florida.
 
 
 4
 Before COX, Circuit Judge, JOHNSON, Senior Circuit Judge, and PAINE*, Senior District Judge.
 
 PAINE, Senior District Judge:
 
 5
 Dorothy G. Twiss, Armin R. Twiss, Martha P. Sanders, James R. Addonizio, Jeffrey B. Miller, J. Letcher Lamkin, David O. Stefl, and Patricia A. Stefl (collectively the "Investors") appeal from summary final judgments entered in this consolidated action in favor of Shearson Lehman Hutton, Inc. ("Hutton"), a securities brokerage firm. Because the district court erroneously held that, as a matter of law, Hutton owed no duty under Florida law to the Investors in this case, we reverse the court's order of summary judgment on the Investors' negligence claims and remand for further proceedings. We, however, affirm the court's grant of summary judgment in favor of Hutton on the Investors' aiding and abetting claims because private plaintiffs no longer may maintain such a cause of action.I. BACKGROUND[1]
 
 
 6
 From 1978 until January 1984, David J. Kury ("Kury") was a registered sales representative with E.F. Hutton & Company, Inc.,[2] and was the manager of Hutton's Pensacola branch office. In 1983, Kury's supervisor, Fred Ronald Brown ("Brown"), discovered that Kury had taken money from several of his clients in exchange for personal and corporate promissory notes. Since he was "very definitely" concerned, Brown immediately notified Hutton's legal department and regional vice president. Brown subsequently asked Kury for a list of the people to whom Kury or his corporation owed money and the amount owed. Hutton then sent letters to all such customers and asked them to verify that Hutton was not obligated on Kury's promissory notes. There is evidence that Brown was aware that Kury's actions violated Hutton's internal rules and policies, the Rules of Fair Practice of the National Association of Securities Dealers ("NASD"), as well as state and federal securities laws.[3] In January 1984, Brown requested and received Kury's resignation.
 
 
 7
 In February 1984, Hutton filed a Uniform Termination Notice For Securities Industry Registration ("Form U-5") concerning Kury's resignation. Hutton reported on the Form U-5 that Kury's termination was voluntary[4] and that it had no "reason to believe" that Kury had violated any state or federal law or regulation or had "engaged in conduct which may be inconsistent with just and equitable principles of trade."
 
 
 8
 Following his termination with Hutton, Kury went to work as a registered sales representative with Prudential-Bache Securities Corporation ("Prudential"). Kury also served as branch office manager of Prudential's Escambia County office. In March 1985, Kury left Prudential and obtained employment with Associated Planners Securities Corporation ("Associated"), where he worked as a registered sales representative and registered principal. In October 1985, Kury Financial Planning Group, Inc. ("Kury Financial") was incorporated under the laws of the State of Florida, and Kury served as director and sole shareholder of that entity. After leaving Associated in April 1987, Kury became the registered sales representative, registered principal, and branch office manager of American Capital Equities Corporation ("American").
 
 
 9
 In May 1988, the Florida Department of Banking and Finance (the "Department") began an investigation of Kury's affairs involving the sale of promissory notes issued by Kury or Kury Financial. In January 1989, a hearing officer with the Florida Division of Administrative Hearings issued a recommended order and found, inter alia, that Kury and Kury Financial had sold approximately $2.4 million worth of personal and corporate notes to at least fifty investors[5] and that Kury's activities constituted, at least in part, the operation of a "pyramid" or "ponzi" scheme.[6] The Department permanently revoked Kury's securities license by final order entered in April 1989.
 
 
 10
 The Investors, persons who became Kury's clients subsequent to his resignation from Hutton, thereafter brought the instant action against Kury, Hutton, and several other defendants. The Investors sued Hutton in negligence for lack of due care and breach of duty to Kury's then and future customers that Hutton allegedly exhibited in misrepresenting the reasons for Kury's termination and in failing to report properly to the regulatory authorities. The Investors also asserted claims against Hutton for aiding and abetting violations of Section 10(b) of the Securities Exchange Act of 1934,[7] and Rule 10b-5 promulgated thereunder.[8] Hutton eventually moved for summary final judgment. Although it concluded that genuine issues of fact exists, the district court nevertheless entered summary judgment on the Investors' negligence claims on the basis that Hutton owed no duty under Florida law to the Investors. The court also granted summary judgment in favor of Hutton on the Investors' aiding and abetting claims. The Investors have timely appealed the district court's rulings.
 
 II. DISCUSSION
 A. Summary Judgment Standard
 
 11
 A district court's grant of summary judgment is reviewed de novo by an appellate court. Thrasher v. State Farm Fire & Cas. Co., 734 F.2d 637, 638 (11th Cir.1984). "When we examine a decision granting or denying summary judgment, we apply the same legal standards that control the district court's determination." Mercantile Bank & Trust Co. v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985) (citing Environmental Defense Fund v. Marsh, 651 F.2d 983, 991 (5th Cir.1981)[9]).
 
 
 12
 Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). There is no genuine issue for trial where the record could not lead a rational trier of fact to find for the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). When the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it has the burden of proof at trial, there is no genuine issue of material fact and summary judgment in favor of the movant is appropriate. Schmelz v. Monroe County, 954 F.2d 1540, 1543-44 (11th Cir.1992) (citing Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2552-53, 91 L.Ed.2d at 273).
 
 
 13
 The party seeking summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact in the case. Adickes v. S.H. Kress and Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142, 154 (1970); Clemons v. Dougherty County, Georgia, 684 F.2d 1365, 1368 (11th Cir.1982). In determining whether a movant has met this burden, the court must review the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Adickes, 398 U.S. at 157, 90 S.Ct. at 1608, 26 L.Ed.2d at 154. "Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all evidence is viewed in the light most favorable to the non-moving party." Morrison v. Washington County, Alabama, 700 F.2d 678, 682 (11th Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983) (citing Adickes, 398 U.S. at 157, 90 S.Ct. at 1608, 26 L.Ed.2d at 154).
 
 
 14
 "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). All reasonable doubts about the facts should be resolved in favor of the non-moving party. Mercantile Bank & Trust Co., 750 F.2d at 841. If reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied. Id. "When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one." Carlin Communication, Inc. v. Southern Bell Telephone and Telegraph Co., 802 F.2d 1352 (11th Cir.1986) (citing Southway Theatres, Inc. v. Georgia Theatre Co., 672 F.2d 485, 495 (5th Cir. Unit B 1982)). Thus, while summary judgment should not be regarded as a disfavored procedural shortcut, Celotex Corp., 477 U.S. at 327, 106 S.Ct. at 2555, 91 L.Ed.2d at 276, any doubt as to the existence of a genuine issue of material fact must be resolved against its entry. 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Sec. 2727 at 124 (1983) (citing Adickes ).
 
 B. Negligence
 
 15
 In Palmer v. Shearson Lehman Hutton, Inc., 622 So.2d 1085 (Fla. 1st Dist.Ct.App.1993), the Florida First District Court of Appeal recently addressed the negligence issues presented by this appeal in two related cases brought against Hutton by other customers who were defrauded by Kury's promissory note scheme.[10] The Palmer court initially found that Hutton owed no common law duty to those investors with respect to Kury's alleged negligent conduct. Id. at 1089. Under the common law, a person has no duty to control the conduct of another or to warn those placed in danger by such conduct unless a special relationship exists between the defendant and the persons whose behavior needs to be controlled or the foreseeable victim of such conduct. Id. (citing Boynton v. Burglass, 590 So.2d 446, 448 (Fla. 3d Dist.Ct.App.1991)). In Palmer, the court recognized that Kury was not employed by Hutton at the time the alleged injuries occurred to those investors and that the investors never were clients of Hutton and did not deal with Kury when he worked for Hutton. Palmer, 622 So.2d at 1089. Because the same facts and reasoning holds true for the instant appeal, we find that the district court correctly found that Hutton owed no common law duty to the Investors in this case.
 
 
 16
 The court in Palmer, however, next found that Florida Statute subsections 517.301(3)[11] and 517.12(11)(b)[12] and rule 3E-600.08 of the Florida Administrative Code,[13] when read in pari materia, impose legal duties on Hutton that support a claim for negligence under the circumstances. Id. The court observed:
 
 
 17
 The statutory provisions clearly imposed on Hutton, at the time Kury left its employ, a legal obligation to report the fact of his termination to the Department, to accurately state the reason for such termination, and to specify any illegal or unprofessional activity committed to Kury then known by Hutton. The rule required Hutton to make the report to the Department by filing a form U-5.
 
 
 18
 Id. at 1090. The court further reasoned that those investors were within the class of persons these provisions were designed to protect "because they are investors in securities and dealt with Kury as a registered securities broker." Id. at 1091. The Palmer court further noted that the investors "suffered the type of injury the statutes were designed to prevent because they lost moneys invested as a consequence of the fraudulent acts of the reregistered broker, Kury." Id. Accordingly, the court held that Hutton failed to establish as a matter of law that it owed no legal duty of care to the investors with respect to their alleged losses under the circumstances shown. Id. at 1093.
 
 
 19
 In a footnote in its answer brief, Hutton argues that Palmer should not be determinative of the Investors' negligence issue in the instant appeal. Hutton first argues that the district court did not rule on any alleged violation of subsection 517.301(3) and therefore that issue has not been preserved for this appeal. Although we generally will not consider a legal theory that was not presented to the district court, we may exercise our discretion to consider an issue first raised on appeal if the issue involves a pure question of law and if the refusal to consider it would result in a miscarriage of justice. Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360-61 (11th Cir.1984). "Consideration of legal arguments not raised in the district court is especially appropriate on appeal from summary judgment." Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 990 (11th Cir.1982). Although the Investors did not specifically cite subsection 517.301(3), their memoranda in opposition to Hutton's motion for summary judgment did cite subsection 517.12(12)(b)[14] and rule 3E-600.008[15] as support for the existence of a legal duty owed to them by Hutton. Subsequent to the district court's grant of summary final judgment in favor of Hutton, the Florida First District Court of Appeal in Palmer concluded that subsections 517.301(3) and 517.12(11)(b) and rule 3E-600.08, when read in pari materia, establish legal duties enforceable in a negligence action. Palmer, 622 So.2d at 1089. Given such circumstances, we find it appropriate to consider the Investors' arguments concerning subsection 517.301(3), and the Palmer decision, in this appeal.[16]
 
 
 20
 Hutton further contends that we should not rely upon Palmer because it purportedly conflicts with E.F. Hutton & Co. v. Rousseff, 537 So.2d 978 (Fla.1989). Hutton's argument, however, is directly refuted by the court's well-reasoned analysis in Palmer:
 
 
 21
 Rousseff does not deal with claims of statutory violations like those alleged in these cases. In Rousseff, the supreme court held that the claimant was not required to prove that his loss was proximately caused by the defendant's fraud because the statutes on which the state law claim was based and the remedies expressly provided therein did not explicitly require proof of loss causation. The portions of the statutes involved in Rousseff, subsections 517.211(2)-(5) and 517.301(1), Florida Statutes (1981), relate only to securities transactions between buyers and sellers and the statutory remedies provided in connection with such sales....
 
 
 22
 Appellants do not rely on these provisions in sections 517.211 and 517.301(1) as the basis for their causes of action in these cases. Nothing in the Rousseff opinion purports to pass on the statutory provisions in subsection 517.301(1), the section relied on by Appellants in these cases. That opinion does not purport to hold that the remedies provided in section 517.211 are exclusive of all other remedies recognized by law, nor is it likely that the court would have so held in view of the statutory and common law remedies provided or preserved to investors in other sections of chapter 517.
 
 
 23
 Palmer, 622 So.2d at 1091-92. We find that the Palmer court properly analyzed and distinguished Rousseff, and therefore, Palmer is controlling authority in this appeal. See Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir.1983) (federal courts applying state law are bound by the decisions of intermediate state courts unless there is some persuasive indication that the state's highest court would decide the issue differently).[17]
 
 
 24
 Finally, Hutton asserts that its Form U-5 was not relied on by the Investors because the Investors never inquired with regulatory authorities before making their loans to Kury. The Investors, however, argue that, if Hutton properly had reported Kury's suspicious transactions, the Department would have commenced a timely investigation against Kury, thereby preventing the scheme to continue to the detriment of future customers such as the Investors. The Investors have produced evidence to support this contention.[18] The district court correctly concluded that genuine issues of material facts remain in this matter.[19]
 
 C. Aiding and Abetting
 
 25
 The Investors also contend that the trial court erred in entering summary judgment in favor of Hutton on the aiding and abetting claims. Under the governing law at the time of the court's order, a party had to prove the following in order to establish liability for damages as an aider and abettor of a violation of Section 10(b) or Rule 10b-5: (1) the commission of a securities law violation by some other party;[20] (2) a general awareness on the part of the accused party that its role was part of an overall activity that was improper; and (3) the accused aider and abettor knowingly and substantially assisted the violation. Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1045 (11th Cir.1986), cert. denied, 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987); Woodward v. Metro Bank of Dallas, 522 F.2d 84, 94-97 (5th Cir.1975). However, in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., --- U.S. ----, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the United States Supreme Court, recognizing that "the text of the 1934 Act does not itself reach those who aid and abet a Sec. 10(b) violation," recently held that a private plaintiff may not maintain an aiding and abetting suit under Section 10(b). Accordingly, we must conclude that the district court properly granted summary judgment in favor of Hutton on the Investors' aiding and abetting claims.
 
 III. CONCLUSION
 
 26
 In light of Palmer, we reverse the district court's order of summary judgment on the Investors' negligence claims and remand for further proceedings. Based on Central Bank of Denver, we affirm the court's grant of summary judgment in favor of Hutton on the Investors' aiding and abetting claims. This cause is remanded for further proceedings consistent with this opinion.
 
 
 27
 AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable James C. Paine, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 This section derives, in part, from the factual history set forth in Palmer v. Shearson Lehman Hutton, Inc., 622 So.2d 1085, 1087-88 (Fla. 1st Dist.Ct.App.1993), a related state proceeding
 
 
 [2]
 Hutton assumed the liabilities and acquired the assets of E.F. Hutton & Company, Inc., by corporate merger
 
 
 [3]
 Brown gave testimony in support of this point at an administrative disciplinary proceeding against Kury. Hutton, however, filed an affidavit of Brown along with its motion for summary final judgment that now conflicts with Brown's earlier testimony
 
 
 [4]
 There are five options that an employer may choose as the reason for termination on a Form U-5: "voluntary," "permitted to resign," "deceased," "discharged," or "other." If either the "permitted to resign," "discharged," or "other" reason is given, the employer must furnish full details for that answer
 
 
 [5]
 The hearing officer also found that Kury had borrowed approximately $327,172 from seventeen clients by the time Kury stopped working for Hutton
 
 
 [6]
 Such a scheme occurs when funds from new investors are used to satisfy interest and principal obligations due on earlier investors' notes
 
 
 [7]
 Section 10(b) states:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 15 U.S.C. Sec. 78j.
 
 
 [8]
 Rule 10b-5 states:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
 in connection with the purchase or sale of any security.
 
 
 [17]
 C.F.R. Sec. 240.10b-5 (1993)
 
 
 [9]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [10]
 The Palmer court recognized the pendency of the instant federal cases and noted that the proceedings were "based on identical facts (the only difference being the identity of the plaintiffs)." Id. at 1088
 
 
 [11]
 Subsection 517.301(3), Florida Statutes (1983), states:
 It is unlawful and a violation of the provisions of this chapter for any person:
 (3) In any matter within the jurisdiction of the department, to knowingly and willfully falsify, conceal, or cover up, by any trick, scheme, or device, a material fact, make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.
 
 
 [12]
 Subsection 517.12(11)(b), Florida Statutes (1983), provides:
 Every dealer shall promptly file with the [D]epartment, as prescribed by rules adopted by the [D]epartment, notice as to the termination of employment of any associated person registered for such dealer in this state and shall also furnish the reason or reasons for such termination.
 Subsection 517.021(4), Florida Statutes (1983), defines "associated person" as:
 Any partner, officer, director, or branch manager of a dealer or investment adviser or any person occupying a similar status or performing similar functions or any natural person directly or indirectly controlling or controlled by such dealer or investment adviser, other than an employee whose function is only clerical or ministerial.
 
 
 [13]
 Rule 3E-600.08, Florida Administrative Code (1983), states in pertinent part:
 (1) Where a registrant ... is terminated for any reason, notice of such fact on the forms prescribed by the Department shall be filed, within twenty (20) calendar days of the date of termination, with the Department.
 (3) The forms presently acceptable for notice to the Department under Subsection (1) above as adopted by Rule 3E-100.09 are:
 (d) Associated Persons (Form U-5).
 
 
 [14]
 Subsection 517.12(11)(b), Florida Statutes (1983), was relocated to subsection 517.12(12)(b), Florida Statutes (1991)
 
 
 [15]
 Rule 3E-600.08, Florida Administrative Code (1983), subsequently has been renumbered to 3E-600.008
 
 
 [16]
 Hutton also asserts that the record evidence establishes that it did not violate subsection 517.301(3). We, however, find that genuine issues of material fact exist in this record as to whether Hutton violated subsection 517.301(3) by knowingly and willfully filing a false Form U-5 with the Department following Kury's termination
 
 
 [17]
 "A federal court is bound by this rule whether or not the court agrees with the reasoning on which the state court's decision is based or the outcome which the decision dictates." Id. (citing Delta Air Lines, Inc. v. McDonnell Douglas Corp., 503 F.2d 239, 245 (5th Cir.1974), cert. denied, 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975))
 
 
 [18]
 In a July 6, 1985, letter to David O. Stefl and Patricia A. Stefl, two of the Investors, Tamara K. Cain, Assistant Director of the Division of Securities and Investor Protection, wrote:
 I do not believe the delay in recognizing Mr. Kury's unlawful activity came from a lack of recognition that his conduct was a violation of law. Instead, the delay came from the Department not being apprised of Mr. Kury's activities from persons who were familiar with his unlawful conduct ... [h]ad the Department been alerted to the possibility of Mr. Kury's unlawful activity sooner, we would have conducted our own independent examination of his activities sooner. As it was, we were not notified of his potential unlawful activity until very recently. As soon as we were notified, we immediately conducted an examination which revealed Mr. Kury's continued violation of Florida law.
 
 
 [19]
 This same analysis resolves Hutton's assertion that one of the Investors, Dorothy G. Twiss, had actual knowledge that Kury was borrowing money from other investors
 
 
 [20]
 In order to state a cause of action for a violation of Section 10(b) or Rule 10b-5, a party must show: (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which such party relied; and (5) that caused that party's injury. Ross v. Bank South, N.A., 885 F.2d 723, 728 (11th Cir.1989) (en banc), cert. denied, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990); Gochnauer v. A.G. Edwards & Sons, Inc., 810 F.2d 1042, 1046 (11th Cir.1987)