**EAST COAST RECYCLING, INC., Plaintiff,**

v.

**The CITY OF PORT ST. LUCIE and St. Lucie County, Defendants.**

**No. 01–14248–CIV–MOORE.**

United States District Court, S.D. Florida, Fort Pierce Division.

Nov. 13, 2002.

Michael K. Spotts, Esq., Stuart, FL, for Plaintiff.

Roger Gail Orr, Esq., Port St. Lucie, FL, Daniel S. McIntyre, Esq., Fort Pierce, FL, Gregory T. Stewart, Esq., Nabors, Giblin & Nickerson, P.A., Tallahassee, FL, for Defendants.

## *ORDER*

K. MICHAEL MOORE, District Judge.

THIS CAUSE is before the Court upon: (1) Motion for Summary Judgment in Fa-

vor of Defendant, City of Port St. Lucie (DE # 32); (2) East Coast Recycling's Cross Motion for Summary Judgment Against the City of Port St. Lucie and St. Lucie County (DE # 46); and (3) Defendant St. Lucie County's Motion for Summary Judgment (DE # 53).

UPON CONSIDERATION of the motions and the pertinent portions of the record, including the memoranda, depositions, and affidavits filed in support of and opposition to the motions, and being otherwise fully advised in the premises, the Court enters the following Order granting the motions by the City of Port St. Lucie and St. Lucie County and denying East Coast Recycling's motion.

### Introduction

Plaintiff East Coast Recycling, Inc. ("East Coast") operates a recycling facility in St. Lucie County, Florida. East Coast initiated this action, based on federal question jurisdiction, in August 2001 against the City of Port St. Lucie (the "City") and St. Lucie County (the "County"). Essentially, East Coast asserts that, through an Interlocal Agreement between the City and the County and various City and County enabling ordinances, the government entities have created a monopoly, thereby impermissibly directing the flow of waste in the City and County's solid waste industry. East Coast alleges that this monopoly violates the commerce clause of the United States Constitution and that the government entities have denied it of its substantive due process rights, in violation of the contracts clause.[1] Accordingly, East Coast asserts that because the City

---

1. In evaluating a contracts clause claim, the Court considers whether the allegedly violative law operates as a substantial impairment of a contractual relationship, and if so, whether that impairment is necessary to meet an important government interest. U.S. Const. art. I, § 10, cl. 1; *Flanigan's Enterprises, Inc. of Georgia v. Fulton County, Georgia,* 242 F.3d 976, 989 (11th Cir.2001). As noted below, in order to avoid the entry of summary

and County are violating its civil rights, it is entitled to damages pursuant to 42 U.S.C. § 1983.

## Factual Background

East Coast first opened its recycling facility in August 1991. At that time, East Coast was the only facility in the County that accepted yard waste. Thus, beginning in January 1992, the City and County franchise haulers, who were selected through a properly administered public bidding process, began depositing yard waste at East Coast's facility. This continued throughout 1992. In January 1993, the franchise haulers, upon instruction from the City and County, began to take yard waste to the County-owned Glades Road Land Fill. The next year, in January 1994, East Coast, after being selected through another public bidding process, commenced the processing of yard trash at the County's landfill. Soon thereafter, on April 26, 1994, East Coast voluntarily terminated the processing contract due to its inability to maintain the required production rate. Thereafter, in September 1997, East Coast received from the State of Florida a permit that authorized East Coast to collect construction and demolition debris. East Coast has never been permitted to accept household waste, except to the extent that it is commingled with construction and demolition debris. Presently, East Coast restricts its business to the collection of demolition and construction debris and the limited collection of yard waste from a single source.

As noted above, East Coast challenges several City and County ordinances as well as an Interlocal Agreement between the City and the County. Essentially, East Coast asks this Court to invalidate all of the City and County ordinances that address garbage, without consideration of whether or not the subject agreement or ordinances actually impermissibly direct the flow of solid waste. The Court chooses not to accept East Coast's invitation and will instead examine the Interlocal Agreement and the ordinances with greater particularity.

The relevant City ordinances[2] do not contain any provisions that limit the flow of waste. Instead, these ordinances simply give exclusive franchises to certain trash haulers. More specifically, the City's ordinances state that all residential waste within the City is to be collected by those haulers who have been selected by the City through a properly administered public bidding process. The ordinances further provide that such waste is to be disposed of in a manner consistent with the Interlocal Agreement. In turn, the Interlocal Agreement provides that waste is to be disposed at the Glades Road Land Fill, which is owned by the County. Accordingly, the City's ordinances address

---

judgment as to the Defendants, East Coast must make a showing sufficient to establish the existence of all elements essential to its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, the failure of proof concerning an essential element of any of East Coast's claims necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment as to that claim. *Id.* Accordingly, where East Coast has haphazardly tossed the phrase "contracts clause" into its pleadings now and again, but has completely failed to establish a contracts

clause claim, the Court determines that East Coast's contracts clause claim lacks merit and summary judgment in favor of the Defendants is unquestionably proper on that claim.

**2.** The relevant City ordinances are: (1) Port St. Lucie City Code, Ordinance 91–32 (Complaint (DE # 1), Exhibit aa); (2) Port St. Lucie City Code, Ordinance 91–33 (Complaint (DE # 1), Exhibit bb); and (3) Port St. Lucie City Code, Ordinance 96–47 (Complaint (DE # 1), Exhibit cc).

the collection of waste, but do not address the flow of waste.

The Interlocal Agreement, entered into between the City and the County, provides that the City is committed to deliver, and the County is bound to accept, substantially all of the City's "municipally collected solid waste" to the County-owned solid waste disposal system.[3] Thus, pursuant to this agreement, the City collects, and the County accepts, all household waste and yard trash that is generated within the City. The agreement further provides that the municipally collected waste enters the County's waste disposal system at the County-owned and operated Glades Road Land Fill. Notably, construction and demolition debris is not collected by the City and it is therefore not regulated or addressed by the Interlocal Agreement.

The relevant County ordinances[4] direct the flow of solid waste within the County to the County's approved facility. Importantly, the County's approved facility is the County-owned Glades Road Land Fill. Like the City ordinances, the County ordinances state that all residential waste collected within the unincorporated areas of the County is to be collected by those haulers who have been selected by the County through a properly administered public bidding process. The ordinances further provide directives for those contractors responsible for collection of solid waste in the unincorporated portions of the County. Additionally, the ordinances provide for penalties, including fines and imprisonment, for those who violate the County's waste provisions.

## Summary Judgment Standard

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *See id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in

---

**3.** Interlocal Agreement, Defendant City of Port St. Lucie's Notice of Filing Depositions, Exhibits and Affidavits (DE # 35), Exhibit 2.

**4.** The relevant County ordinances are: (1) St Lucie County Code § 90–40 (Complaint (DE # 1), Exhibit A); (2) St Lucie County Code § 1–9–31 (Complaint (DE # 1), Exhibit B);

and (3) St Lucie County Code § 1–9–32 (Complaint (DE # 1), Exhibit B); (4) St Lucie County Code § 93–16 (Complaint (DE # 1), Exhibit C); (5) St Lucie County Code § 93–216 (Complaint (DE # 1), Exhibit D); and (6) St Lucie County Code § 99–003 (Complaint (DE # 1), Exhibit E).

this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. 2505.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See id.*

### Discussion

### Standing

The City and County each assert that East Coast lacks standing to assert the claims herein. The Court disagrees. In order to establish Article III standing, East Coast must demonstrate that: (1) it has suffered an injury in fact; (2) the injury was causally connected to the City and County's actions; and (3) the injury will be redressed by judgment in its favor. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Additionally, East Coast is required to satisfy a prudential limitation on jurisdiction. Specifically, East Coast must show that the interest it seeks to protect "arguably fall[s] within the zone·of interests protected or regulated by, the statutory provision or constitutional guarantee invoked in the suit." *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

■ The Court determines that East Coast has Article III standing where it asserts that the City and County, by entering into the Interlocal Agreement and enacting various enabling ordinances, have harmed East Coast by excluding it from the yard waste market in the City and County. Furthermore, because East Coast engages in the collection of yard waste, albeit a *de minimus* collection, and because the suspect laws govern the collection and disposal of household and yard waste, East Coast's grievance falls within the zone of interests protected by the guarantees provided under the commerce clause. Accordingly, East Coast has standing to assert the claims herein.

### Dormant Commerce Clause

The commerce clause provides that "Congress shall have Power ... [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. The clause does not expressly address the states' power to regulate inter-

state commerce. While it is clear that the supremacy clause prohibits state regulation of interstate commerce where Congress has spoken, neither the text of the commerce clause nor the supremacy clause delineates "what the states may or may not do in the absence of congressional action." *Department of Revenue v. Ass'n of Wash. Stevedoring Cos.*, 435 U.S. 734, 749, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978). Thus, over the last two centuries, Courts have fashioned "dormant" or "negative" commerce clause jurisprudence that essentially acknowledges that Congress' inherent and exclusive power to prescribe limits on interstate commerce necessarily implies the power to determine what remains unrestrained. *See Gibbons v. Ogden*, 22 U.S. 1, 227, 9 Wheat. 1, 6 L.Ed. 23 (1824) (Johnson, J., concurring).

■ The threshold issue in this Court's dormant commerce clause analysis is whether the ordinances and Interlocal Agreement affect interstate commerce, and if so, whether those laws *per se* discriminate against interstate commerce. *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). A finding of *per se* discrimination ends the inquiry and the subject laws are invalidated. On the other hand, where the Court determines that the subject laws do not discriminate *per se,* the Court must consider whether the laws impose a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

### The City's Ordinances

■ As noted above, the City's ordinances do not, in any way, direct the *flow* of solid waste. Instead, these ordinances address the *collection* of waste within the City. East Coast has not cited, nor has the

Court found upon exhaustive independent research, a single case that supports the notion that a city's attempt to regulate the collection of waste is violative of the commerce clause. Furthermore, mere reference to the Interlocal Agreement in the City's ordinances, even assuming the Interlocal Agreement impermissibly burdens interstate commerce by restricting the flow of solid waste, is not enough to render those ordinances invalid. Accordingly, to the extent East Coast asserts claims against the City based on the City's ordinances, those claims are without merit. Nevertheless, the City is also party to the Interlocal Agreement. Thus, the City could still be accountable to East Coast in the event the Court determines that the Interlocal Agreement violates the dormant commerce clause.

### The County's Ordinances and the Interlocal Agreement

■ The County's ordinances provide for the disposal of solid waste in the unincorporated areas of the County. In turn, the Interlocal Agreement provides for the disposal of solid waste in the City. Specifically, the aforementioned laws require the disposal of collected waste, mostly household waste and yard trash, at the County approved facility, that is, the County-owned Glades Road Land Fill.

Pursuant to Florida Statute § 403.706, each Florida county is required to provide for the operation of solid waste disposal facilities in all incorporated and unincorporated areas of the county. Fla. Stat. § 403.706(1) (2002). Likewise, each city is responsible for collecting and transporting solid waste from its jurisdiction to a solid waste disposal facility that is operated either by the county or under contract by the county. *Id.*

Despite the foregoing, it is unmistakably clear that counties and municipalities may

not exercise this power in a manner that violates the dormant commerce clause. In *Carbone*, the United States Supreme Court struck down a Clarkstown, New York ordinance that required all solid waste within the town, whether or not it was generated there, to be sent to a particular transfer station before being shipped out of the municipality. *C & A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 387, 114 S.Ct. 1677, 1680–81, 128 L.Ed.2d 399 (1994). In that case, the city discovered that Carbone, a waste recycler, was shipping household waste directly to a landfill in Indiana in violation of the town's ordinance. *Id.,* 511 U.S. at 388, 114 S.Ct. 1677. The town brought an injunctive action in state court against Carbone, and eventually, the Supreme Court held that the ordinance constituted a *per se* violation of the commerce clause. *Id.* at 388–89, 114 S.Ct. 1677. The Court stated that "the article of commerce [was] not so much the solid waste itself, but rather the service of processing and disposing of it." *Id.* at 391, 114 S.Ct. 1677. Accordingly, the Court reasoned that the ordinance impeded the flow of solid waste, and impermissibly restricted interstate commerce, where it penalized waste recyclers like Carbone by requiring them to send their waste to the city's chosen facility rather than out-of-state, thereby increasing their costs. *Id.* Notably, the *Carbone* majority determined that the chosen facility in that case was a "local private contractor." *Id.* at 387, 114 S.Ct. 1677. Furthermore, while East Coast does not acknowledge this public-private distinction, this Court is convinced that the distinction is not only relevant, but indeed key, to the analysis in this case.

The *Carbone* majority made several references to the private nature of the favored facility. *United Haulers Ass'n, Inc. v. Oneida–Herkimer Solid Waste Mgmt. Auth.,* 261 F.3d 245, 258–59 (2d Cir.2001). Indeed, the Court repeatedly noted the dangers of permitting a local government to favor local industry or a single local business over out-of-state competition. *Carbone* 511 U.S. at 392, 114 S.Ct. 1677 (the flow control ordinance [is protectionist where it] favors a *single local proprietor* )(emphasis added); *Id.* at 394, 114 S.Ct. 1677 ("the town may not employ discriminatory regulation to give the [designated facility] an advantage over *rival businesses* from out of state")(emphasis added); *Id.* ("[s]tate and local governments may not use their regulatory power to favor *local enterprise* by prohibiting patronage of out-of-state competitors or their facilities")(emphasis added). Accordingly, the majority found that where the town's ordinance directed the flow of solid waste to a favored private facility within the town, it gave that facility an advantage over out-of-state rival businesses and, in doing so, violated the dormant commerce clause.

On the other hand, three dissenting justices in *Carbone* determined that there was no commerce clause violation because the favored facility was public in nature. *Id.* at 411, 114 S.Ct. 1677 (Souter, J., dissenting). Notably, the Town of Clarkstown chose not to build the transfer station itself. *Id.* at 387, 114 S.Ct. 1677. Instead, the town contracted with a private company to build the station and run it for a period of five years, after which the town could buy the station for $1. *Id.* This arrangement, according to the dissent, was simply a way for the town "to finance a public improvement," and such public improvement did not *per se* discriminate against interstate commerce or violate the dormant commerce clause under the *Pike* balancing test. *Id.* at 411, 114 S.Ct. 1677 (Souter, J., dissenting). Conversely and as stated above, the majority found that the station was private in nature and that the

ordinance was therefore violative of the dormant commerce clause.

In this case, the parties agree that the facility is indeed public. Accordingly, this Court is confident that the Interlocal Agreement and the ordinances do not discriminate against interstate commerce. However, that determination does not end the inquiry. Instead, the Court must next determine whether the laws impose a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." *Pike*, 397 at 142, 90 S.Ct. 844. This analysis is often referred to as the *Pike* balancing test. Essentially, if the Interlocal Agreement and ordinances serve a legitimate local interest and do not patently discriminate, they will be upheld insofar as they do not excessively or unnecessarily burden interstate commerce.

The County and City have not only an interest, but an obligation under Florida statutory law, to provide, respectively, for the operation of solid waste disposal facilities and for the collection and transport of solid waste to that facility. Fla. Stat. § 403.706. Furthermore, it is unquestionable that the provision of these services protects the public health, safety and welfare of the citizens of the City and County. With respect to the imposition of burdens on interstate commerce, the record is void of a single allegation that any out-of-state, or out-of-county for that matter, disposal facility has been harmed by the subject laws. There is no indication that any other disposal facility is capable of handling the City and County's waste. Even East Coast, by virtue of its state permit regarding the collection of construction and demolition debris, is not permitted to collect household waste.

Nor is there any allegation of above-market pricing that could have constitutional significance. In *Carbone*, the waste recycler argued that the flow control ordi-

nance at issue "prevent[ed] trash from being sent to the most cost-effective disposal facilities...." *Id.* at 424, 114 S.Ct. 1677 (Souter, J., dissenting)(*quoting* Brief for Petitioners 32). Furthermore, the record in that case reflected that customers paid $11 more per ton for dumping trash at the favored facility than they would have paid at Carbone's facility. On the contrary, there is no similar allegation in this case. Nowhere in the record is there even a hint that the Interlocal Agreement and ordinances have the effect of increasing the cost associated with dumping trash in the City or County. Instead, East Coast has riddled the record with assertions to the effect that the subject laws violate the dormant commerce clause because East Coast is not the favored facility. The Court is quite confident that if East Coast were the favored facility, it would vigorously defend the arrangement and argue that there is no commerce clause violation.

In sum, it is clear that the ordinances and Interlocal Agreement do not impose any burden on interstate commerce, much less a burden that exceeds the local benefits associated with the County and City's provision of solid waste disposal services. Thus, the Court finds that the laws are valid under the *Pike* balancing test.

## Conclusion

Accordingly, the Court determines that East Coast has standing to assert the claims herein. However, East Coast has failed to establish that the subject laws *per se* discriminate against interstate commerce or that the laws impose a burden on interstate commerce that is clearly excessive in relation to the putative local benefits. Thus, the laws do not violate either the commerce clause of the United States Constitution or East Coast's substantive due process rights. Furthermore, East Coast is not entitled to damages pursuant

to 42 U.S.C. § 1983. Accordingly, and based on the foregoing, it is

ORDERED AND ADJUDGED that the Motion for Summary Judgment in Favor of Defendant, City of Port St. Lucie (DE # 32) is GRANTED.

IT IS FURTHER ORDERED that East Coast Recycling's Cross Motion for Summary Judgment Against the City of Port St. Lucie and St. Lucie County (DE # 46) is DENIED.

IT IS FURTHER ORDERED that Defendant St. Lucie County's Motion for Summary Judgment (DE # 53) is GRANTED. The Clerk is directed to CLOSE this CASE. All motions not otherwise ruled upon are DENIED as MOOT.