**TRANSAMERICA LEASING, INC., Plaintiff,**

v.

**The INSTITUTE OF LONDON UNDERWRITERS, et al., Defendants.**

**No. 96–2712–CIV.**

United States District Court, S.D. Florida, Miami Division.

May 6, 1998.

Kieron F. Quinn, Baltimore, MD, Philip A. Allen, III, Litow Cutler Zabludowski & Allen, Miami, FL, for Plaintiff.

Derek A. Walker, Scott A. Soule, Chaffe McCall Phillips Toler & Sarphy, New Orleans, LA, Jonathan William Skipp, Horr Linfors Dadeland Boulevard, Miami, FL, for Defendants.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Renewed Motion for Summary Judgment (DE # 87) and Defendants' Cross Motion for Summary Judgment (DE # 28).

UPON CONSIDERATION of the Motion, responses, materials submitted, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

Plaintiff Transamerica Leasing, Inc. ("Transamerica") brings this action, on its own behalf and as assignee of all rights under certain leases naming Tiphook Container Leasing ("Tiphook") as lessor, against several insurance underwriters ( "Underwriters")[1] alleging that Underwriters have failed to satisfy a claim filed by Transamerica under certain insurance policies issued by Underwriters to C.A. Venezolana de Navigacion ("CAVN"), a Venezuelan flag shipping line with headquarters in Miami. Transamerica filed this suit in September 1996 in Florida state court. Underwriters removed the case to this Court on the basis of diversity jurisdiction and admiralty and maritime jurisdiction. 28 U.S.C. §§ 1332 and 1333. In its Motion, Transamerica argues that it is a named assured party under the insurance policies and thus entitled to recovery in connection with its claim. In opposition, Underwriters argue that Transamerica is merely a loss payee under the policies and that Transamerica's recovery under the policies is dependant upon the successful claim of CAVN. Underwriters argue the policies are void because CAVN failed to disclose material information to Underwriters when procuring and renewing the policies, thus precluding *any* recovery under the policies for CAVN, and by extension Transamerica.

## STATEMENT OF FACTS

After reviewing the record, the Court accepts the following facts as true for deciding this motion: Transamerica is a lessor of ocean cargo containers and other related equipment who entered into various lease agreements with CAVN. In addition to its agreements with CAVN, Transamerica is the assignee of all rights under certain lease agreements with Tiphook, another leasing company. Over time, CAVN took on lease a significant amount of Transamerica and Tiphook equipment pursuant to various lease agreements.

Beginning in 1991, CAVN acquired all risk insurance from Underwriters. Rollins Huding Hall ("RHH") was CAVN's United States broker and Nicholson Chamerlain Colls Ltd. was the London-based broker for Underwriters. The original slip policy issued for the policy year beginning June 30, 1991 (No. 91MFOO83) named CAVN as the only assured. Subsequent to the issuance of the policy, an addendum was executed that stated the following:

> Noted and agreed as from inception, Named Assured is more precisely as below and not as previously advised:
>
> C.A. VENEZOLANA DE NAVIGACION and/or Associated and/or Affiliated and/or Inter-related Companies and various Lessors.

<hr />

1. The suit names 17 insurance underwriters as defendants. As they are being sued collectively, there is no need to name each defendant individually.

Losses if any are payable to the Assured as their respective interests may appear or order.

All other slip terms, clauses and conditions remain unaltered.

CAVN again acquired all risk insurance from Underwriters for the policy year beginning June 30, 1993 (policy no. MN7330K).[2] RHH was again the United States broker for CAVN and Leslie & Godwin Ltd. was the London-based broker for Underwriters. In the slip policy for the 1993 policy, the named assureds were:

"C.A. Venezolana de Navigacion and/or Leasing Companies as Owners and producers of equipment and/or subsidiary and/or associated and/or affiliated companies."

Addendum number one to the 1993 policy, dated October 4, 1993, states the following:

It is hereby noted and agreed to accept the following as ... loss payees as their respective interests may appear;

\* \* \* \* \* \*

Transamerica Leasing, Incorporated

\* \* \* \* \* \*

Tiphook Container Rental Company

\* \* \* \* \* \*

All other terms, clauses and conditions remain unaltered.

For the policy year beginning June 30, 1994, CAVN once again acquired all risk insurance from Underwriters (policy no. MW22227L). As with the 1993 policy, RHH was the United States broker for CAVN and Nicholson Leslie (a company formed by a merger involving Leslie & Godwin) was the London-based broker for Underwriters ("London Broker"). The 1994 policy was essentially identical to the 1993 policy. Again the named assureds were:

"C.A. Venezolana de Navigacion and/or Leasing Companies as Owners and producers of equipment and/or subsidiary and/or associated and/or affiliated companies."

In addition, the 1994 policy listed Transamerica and Tiphook as loss payees (the

section listing the loss payees was incorporated directly into the policy rather than in an addendum).

For the 1994 policy, CAVN financed the insurance premium through Cananwill, Inc., a premium finance company. Under this arrangement, Underwriters were paid 100% of their premium at the inception and the finance company bore the risk of nonpayment and was given authority to cancel the policy for nonpayment. On September 29, 1994, Cananwill issued a notice of cancellation for nonpayment of premium. On that same date, CAVN paid Cananwill the delinquent premium. On October 3, 1994, RHH notified London Broker that payment was received and that London Broker should not process the cancellation. On October 4, 1994, London Broker responded to RHH stating that Underwriters were notified. London Broker also advised that the coverage remained in force. On October 5, 1994, RHH forwarded a reinstatement notice from Cananwill to London Broker asking that Underwriters complete the form. On October 6, 1994, London Broker responded that Underwriters did not have to reinstate the policy because they had never canceled the policy. On October 7, 1994, London Broker sent notice to RHH that one of the Underwriters had tendered its 30–day notice to terminate coverage. Based on the 30–day notice, coverage would terminate on November 6, 1994. Apparently, CAVN missed another payment and on October 21, 1994, Cananwill issued another notice of cancellation to occur on November 1, 1994. The policy was finally canceled on November 1, 1994. CAVN is currently involved in bankruptcy proceedings in Venezuela.

Sometime in July 1994, CAVN informed Transamerica that it had lost track of several hundred pieces of Transamerica's equipment. Transamerica searched for and recovered some equipment but could not locate many units. In October 1994, CAVN informed Transamerica that the units were either lost or damaged and would not be returned.[3] On

---

**2.** CAVN obtained insurance for the policy year beginning June 30, 1992, however, that policy is not at issue in this case.

**3.** Underwriters in their Statement of Contested Material Facts deny that CAVN informed Trans-

america of the loss in July and October 1994 but only to the extent they claim Transamerica has not provided documentation regarding these statements.

November 10, 1994, Susan Esposito, Manager of Risk Management for Transamerica, sent a letter to RHH giving notice of a claim under the 1994 policy for physical damage and loss of containers on hire to CAVN. (Aff. of Susan M. Esposito Ex. 2.) On November 16, 1994, Dianne Lord, Claims Service Representative for RHH, responded to the November 10, 1994 letter informing Ms. Esposito that RHH would give provisional notice of the loss to Underwriters and asking for additional, more detailed information with respect to the claim. (*Id.* Ex. 3.) Ms. Lord did in fact contact London Broker on November 16, 1994 with instructions to give Underwriters provisional notice of Transamerica's claim. (Defs.' Opp'n to Pl.'s Ren. Mot. for Summ. J. Ex. A, ARS 0171.) Ms. Esposito responded on November 23, 1994 informing RHH that CAVN was in possession of much of the requested information and that RHH should contact CAVN for the requested information. (Esposito Aff. Ex. 4.) On January 11, 1995, RHH informed Ms. Esposito that they were unsuccessful in obtaining information from CAVN and that Underwriters had appointed Quantum Adjusters to investigate the claim. (*Id.* Ex. 5.) In response to a request for information from Quantum Adjusters, Ms. Esposito sent Quantum a summary of equipment possessed by CAVN that Transamerica believed to be lost, stolen, damaged or destroyed. (*Id.* Ex. 7.) Underwriters retained an attorney who contacted Ms. Esposito on August 10, 1995 requesting detailed information regarding container number, lease agreements, invoices and other related documents. (*Id.* Ex. 8.) On August 31, 1995, Ms. Esposito responded to Underwriters' attorney, forwarding the following documents:

Master Lease Agreement between Transamerica and CAVN for containers and chassis;

Trailer Lease Agreement between Transamerica and CAVN for trailers;

User Membership Agreement between Transamerica and CAVN for pool trailers;

List of containers and chassis unit numbers;

List of trailer numbers;

Statement dated 8/22/95; and

Copy of Transamerica's letter, dated January 4, 1994, to CAVN stating the current values for each piece of equipment, which were the values for which Transamerica was submitting its claim.

(*Id.* Ex 10.) On October 23, 1995, Underwriters' attorney contacted Ms. Esposito confirming receipt of the documents and informing Ms. Esposito that the documents "did not assist in evaluating what containers are missing/damaged." (Def. Opp'n Ex. K.) In response, on November 27, 1995, Ms. Esposito contacted Underwriters' attorney informing them of the current status of Transamerica's claim and forwarding certain additional lists of units. (Esposito Aff. Ex. 12.) On January 6, 1996, Underwriters' attorney contacted Ms. Esposito informing her of Underwriters' denial of the claim. Underwriters' attorney included a copy of Underwriters' Letter of Repudiation, dated December 5, 1995, that stated the following:

Due to the volume of claims intimated against CAVN under the [1993 and 1994 policies], the age of several of the claims and the total lack of assistance insurers have received from CAVN in identifying the number of claims lodged with them, insurers hereby formally decline cover in respect of any claims of whatsoever nature that may fall for their consideration under the [1993 and 1994 policies].

Insurers hereby repudiate cover under the [1993 and 1994 policies] due to late notification and failure by CAVN to disclose material facts to underwriters at each and every renewal subsequent to bankruptcy proceedings in the Venezuelan Supreme Court.

(*Id.* Ex. 13.) Underwriters have never received information from CAVN concerning Transamerica's claim. In addition, Transamerica has stated that it does not know the precise date on which the missing and damaged containers were lost, damaged or destroyed and that it is unaware of the cause of loss, damage or destruction to the containers. (Def. Opp'n Ex. H.)

## DISCUSSION

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unam-

biguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Rule 56(e), Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the

particular cause of action before it. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

## II. Status of Transamerica

■ The initial question facing the Court is whether under the policies, Transamerica is an additional assured party (or coinsured) or merely a loss payee. A coinsured party under an insurance policy has all the rights afforded to the named insured and can recover on the policy under its own right. On the other hand, a loss payee under an insurance policy is merely a party designated to receive payment should the named insured prevail on its claim. *See* 5A Appleman, Ins. L. & P. § 3335. In other words, a loss payee can only recover to the extent the named insured can recover. Transamerica contends that it is an assured party under the policies and that it can recover the full amount of the claim. Underwriters argue that Transamerica is merely a loss payee and cannot recover because the policies are void as a result of certain of CAVN's actions.

■ Contract interpretation is generally a question of law. *Lawyers Title Insurance Corp. v. JDC (America) Corp.,* 52 F.3d 1575, 1580 (11th Cir.1995). The preliminary inquiry of whether a contractual ambiguity exists is also a question of law that the Court may resolve summarily. *Int'l Brotherhood of Boilermakers v. Local Lodge D111,* 858 F.2d 1559, 1561 (11th Cir.1988), *cert. denied,* 490 U.S. 1047, 109 S.Ct. 1955, 104 L.Ed.2d 424

(1989) (citing *Orkin Exterminating Co. Inc. v. F.T.C.*, 849 F.2d 1354 (11th Cir.1988)). Upon review of the insurance policies, the Court agrees with Transamerica's contention that it is an assured party under the policies.

The 1993 policy and 1994 policy list the assured as

> "C.A. Venezolana de Navigacion and/or *Leasing Companies* as Owners and producers of equipment and/or subsidiary and/or associated and/or affiliated companies." (emphasis supplied).

Addendum No. 1 to the 1993 policy and the 1994 policy both state, however, that Transamerica is a loss payee. Underwriters point to this language as evidence that Transamerica is only a loss payee under the policies. While it is true that Transamerica is listed as a loss payee under both policies, Underwriters do not dispute that the plain language of both policies lists "Leasing Companies" as additional assured parties. Underwriters also do not dispute that Transamerica is a leasing company. The Court cannot ignore the plain language of the policies, executed by Underwriters, that the assured include "Leasing Companies," and that such term includes Transamerica.

■ Thus, Underwriters offer no evidence that Transamerica is not *also* an assured party under the policies. A party can be both an assured party and a loss payee under an insurance policy and that appears to be the case involving the 1993 policy and the 1994 policy. Even viewed in the light most favorable to Underwriters, the Court finds that Transamerica is an assured party under the policies.

### III. Status of the Policies

Underwriters further argue that the policies are void because CAVN failed to disclose material information when procuring and renewing the policies. CAVN's actions, Underwriters argue, preclude Transamerica from recovering under the policies. Underwriters make no allegation that Transamerica has failed to disclose material information. Transamerica argues that even if CAVN failed to disclose material information, CAVN's actions are not imputed to Transamerica and the policies, if at all void, would be void as to CAVN only. Underwriters' argument for precluding Transamerica from

recovering is based primarily on the theory that Transamerica is merely a loss payee under the policies. The Court has already rejected this argument. Nevertheless, the Court must address the question of whether the acts of an insured party under an insurance policy void the policy as to a coinsured party, i.e., whether the insurance contract is severable.

■ Initially, because this case appears in this Court on the basis of both maritime and diversity jurisdiction, the Court must determine which law applies. The determination of choice of law in connection with maritime insurance contracts has a long, complicated history. *See ABB Power T & D v. Gothaer Versicherungsbank VVAG*, 939 F.Supp. 1568 (S.D.Fla.1996) (discussing choice of law cases in the context of marine insurance contracts). In *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), the Supreme Court determined that state law, not federal law, ordinarily governs marine insurance contracts and that absent a firmly entrenched admiralty doctrine, state law would control. In this case, that would suggest that Florida law would be applicable.

The plain language of the policies states, however, that "This insurance is subject to English law and practice." The law in this circuit does not prevent parties from contracting to a specific application of law, *see King v. Allstate*, 906 F.2d 1537, 1541 (11th Cir.1990) ("There being no public policy problem whatsoever in parties to a marine insurance contract setting the terms of the policy between them, we uphold their freedom to do so."), and such clauses are enforceable. *See Trinidad Foundry & Fabricating v. M/V K.A.S. Camilla*, 966 F.2d 613, 615 (11th Cir.1992). While it is true that Transamerica was not a contracting party to the insurance contract, Transamerica's claim under the policy is subject to the terms and conditions therein. Accordingly, with respect to whether the policies are severable, the Court will look to English law.

When analyzing foreign law, a district court may consider any relevant source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. *Id.* at 615; Fed.R.Civ.P.

44.1. Transamerica and Underwriters both have submitted affidavits and English statutes and case law in support of their arguments.[4]

In support of its argument that the policies are severable, Transamerica cites the English case of *New Hampshire Ins. Co. v. MGN, Ltd.,* [1996] CLC 1692. In *MGN,* an insurance company issued a policy to a group of companies. The insurance company denied coverage under the policies alleging that the nondisclosure of material information by one of the parties voided the policy as to all the companies. The Court rejected that argument and held that each of the companies insured under the policy had a separate interest with respect to the insurance coverage, even though they were all named in the same policy. The Court held that the policy could be voided only as to the party that made the nondisclosure. *See also Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Assoc.,* 888 F.Supp. 1150, 1155 (S.D.Fla.1995), *aff'd,* 117 F.3d 1328 (11th Cir.1997) (citing Florida law and holding that severability of contractual provisions protects the assured from the contractually violative acts of a coassured). The affidavit and law submitted by Underwriters does not contradict Transamerica's argument. Rather, Underwriters focus on the doctrine of *uberrimae fidei.* This doctrine states that in a marine insurance contract there is a duty of utmost good faith and that, in the absence of such good faith, the contract can be avoided by either party. Marine Insurance Act, 1906, § 17 (Eng.). Nondisclosure of material information is grounds for avoidance. *Id.* § 18(1). Underwriters argue that under the doctrine of *uberrimae fidei,* CAVN's nondisclosure voids the policy and that as a loss payee under the policy, Transamerica cannot recover. The Court rejects Underwriters' argument having already determined that Transamerica is an assured party under the policies, not a loss payee. As such, Transamerica is not dependant upon CAVN to state a valid claim under the policies. It may or may not be true that CAVN failed to disclose material information but the Court need not address that issue here. The

relevant analysis is whether the contract is severable as to Transamerica. On this point, the Court agrees with Transamerica's argument that under English law the policy is severable as to Transamerica and thus not void.

## IV. Proper Procedure for Filing a Claim

Transamerica argues that it has met its burden to show coverage under the policies and that it is entitled to recovery as a matter of law. It is undisputed that the policies were "all risk" policies, that is, they cover loss from all risks except those excluded from coverage, and that they expressly cover loss for "mysterious disappearance." To recover on an all risk policy, the insured must only prove that a fortuitous loss occurred. 9 Couch on Insurance § 137:15 (3d ed.). For mysterious disappearance claims, the insured must show that the loss occurred during the policy period. *Id.; see also New Hampshire v. Martech USA, Inc.,* 993 F.2d 1195 (5th Cir.1993); *Atlantic Lines, Ltd. v. American Motorists Ins. Co.,* 547 F.2d 11 (2d Cir.1976). Upon that showing, the burden shifts to the insurer to show that the loss occurred outside the policy period or, in the alternative, arose from a cause excluded under the insurance contract. *See Martech.*

The record shows the policies were in effect from June 30, 1993 until November 1, 1994 and that CAVN reported losses to Transamerica in July and October 1994. Upon receiving such information from CAVN, Transamerica contacted RHH informing them of a claim under the policies. RHH then gave provisional notice of the claim to the London Broker. Underwriters' sole evidence that the losses occurred outside the policy periods is based on its argument that the policies as a whole are void, which the Court has already rejected. In addition, Underwriters' repudiation letter does not state as a reason for denial of coverage that the policies were not effective at the time of the loss. Accordingly, the Court finds that Transamerica has sustained its burden of producing evidence that its losses occurred

---

**4.** Transamerica has submitted the affidavit and supporting documents of Edward Sibley, a partner in the firm of Berwin Leighton and Underwriters have submitted the affidavit and supporting documentation of Christopher Joseph Dunn, a partner in the firm of Waltons & Morse.

during the policy periods. The burden now shifts to Underwriters to show that Transamerica's claim is excluded under the terms of the policies.

 Underwriters argue that "a statement regarding *any* loss, from [Transamerica] or any other container lessor was *never* received during the term of the policies and has still not been received." (Def. Opp'n p. 22). According to Underwriters, this violates the requirement that Underwriters are to be given prompt notice of any claims under the policies. The facts show differently, however. As stated, it is undisputed that CAVN informed Transamerica of the loss in October 1994 and that Transamerica informed RHH of the loss on November 10, 1994. On November 16, 1994, RHH contacted London Broker with instructions to give provisional notice to Underwriters of Transamerica's claim. Thereafter, a significant amount of correspondence occurred between Transamerica, RHH, Underwriter's attorneys and Quantum Adjusters (hired by Underwriters) concerning details of the equipment upon which the claim was based. Clearly, Underwriters had prompt knowledge of Transamerica's claim.

 Finally, Underwriters raise various other arguments that Transamerica's claim under the policies is excluded from coverage pursuant to the terms and conditions of the policies. First, underwriters argue that Transamerica only became concerned about the loss of its equipment after CAVN filed for bankruptcy and therefore the claim is excluded under the policies.[5] Second, Underwriters argue that in an unrelated action, Transamerica admits that CAVN has converted the leased equipment which precludes coverage under the policies.[6] The Court already has determined that the actions of an insured party do not prevent a coinsured party from recovering under the policies. For that reason, the Court rejects

Underwriters' additional arguments. Accordingly, the Court finds that Underwriters have failed to establish that coverage is excluded under the terms of the policies.

In sum, the Court finds that Transamerica is an additional assured party under the policies and that it has complied with the requirements of filing a claim under such polices. Because Underwriters have failed to establish that the loss occurred outside the policy periods or that Transamerica's claim is excluded under the policies, the Court will enter summary judgment in favor of Transamerica.

## V. Damages

 The final issue the Court must address is what measure of damages should be awarded to Transamerica. In its Renewed Motion, Transamerica requests judgment in the amount of $4,682,070.45. Underwriters argue that at various stages in this action, Transamerica has requested inconsistent damages.[7] It appears from a review of the record that the damages claimed by Transamerica appear to have changed throughout the period of this proceeding. Although Transamerica has admitted the amount of damages claimed decreased as Transamerica located a number of the lost units, (Resp. To Def. Motion in Limine, p. 2), it is still unclear from the record what the exact of measure of damages should be. The Court views this inconsistency and fluctuation in the amount of damages claimed by Transamerica as evidence that a genuine issue remains as to the amount of damages to which Transamerica is entitled. Accordingly, with respect to damages only, Plaintiff's motion for summary judgment will be denied.

## CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that Transamerica's Re-

---

5. The policies state under exclusion 5.6 that "In no case shall the insurance cover loss damage or expense arising from insolvency or financial default."

6. The policies state under exclusion 5.1 that "In no case shall the insurance cover loss damage or expense attributable to the willful misconduct of the Assured."

7. In contrast to the $4,682,070.45 requested in its Renewed Motion for Summary Judgment, Transamerica has at times requested judgment in the amount of $5,324,406.21 (Amended Complaint) and $4,485,600 (original Motion for Summary Judgment).

newed Motion for Summary Judgment be, and the same is hereby, GRANTED in part and DENIED in part and Underwriters' Cross Motion for Summary Judgement be, and the same is hereby, DENIED. Transamerica shall file a supplemental summary judgment brief on the issue of damages within thirty (30) days of the date of this order.