**TRANS OCEAN CONTAINER CORPORATION,**
Plaintiff,

v.

**The YORKSHIRE INSURANCE COMPANY, LTD. "C" ACCOUNT, et al., Defendants.**

**No. 98–56–CIV.**

United States District Court, S.D. Florida, Miami Division.

Nov. 19, 1999.

See also 7 F.Supp.2d 1340.

Philip A. Allen, III, Litow Cutler Zabludowski & Allen, Miami, FL, Martin E. Wolf, Attanasio & Wolf, Bel Air, MD,

Kieron F. Quinn, Baltimore, MD, for plaintiff.

Gary Pappas, Carlton Fields, Miami, FL, Derek A. Walker, Chaffe McCall Phillips Toler & Sarpy, New Orleans, LA, for defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Trans Ocean's Motion for Partial Summary Judgment (DE # 26) and Underwriters' Motion for Summary Judgment/Partial Summary Judgments (DE # 149).

UPON CONSIDERATION of the Motions, responses, numerous affidavits and supplements, and all other pertinent portions of the record, the Court enters the following Order.

## BACKGROUND

Plaintiff Trans Ocean Container Corporation ("Trans Ocean") brought this action against The Institute of London Underwriters ("Underwriters"), alleging that Underwriters have failed to satisfy a claim by Trans Ocean under two insurance policies issued by Underwriters to C.A. Venezolana de Navigacion ("CAVN")—a Venezuelan shipping line. The case was initially filed in state court, and was subsequently removed to federal court on the basis of diversity jurisdiction and maritime jurisdiction.

In its Motion, Trans Ocean asserts that it is an "additional assured" for all purposes under the policies at issue, and that it is thus covered for certain containers that were lost while in possession of CAVN. In doing so, Trans Ocean asserts that the Court is bound, pursuant to the doctrine of collateral estoppel, by its May 6, 1998 findings with regard to liability in the case of *Transamerica Leasing Inc. v. The Institute of London Underwriters*, Case No. 96–2712–CIV–MOORE, in which the Court determined that leasing companies were covered as additional assureds in the event of property damage or loss under the subject policies.

Trans Ocean further claims that in the event the Court concludes that it is not bound by the doctrine of collateral estoppel, the Court must nevertheless conclude that Trans Ocean was an additional assured under the policies, based upon the plain language of the policies themselves, and is thus covered for the lost or damaged equipment that it had leased to CAVN. In addition, Trans Ocean asserts that it need not present with precision the dates or causes of the losses incurred. Rather, Trans Ocean claims that the burden to demonstrate that losses sustained by Trans Ocean took place beyond the policy period falls on Underwriters.

In response to Trans Ocean's Motion, Underwriters make several important arguments. To begin, Underwriters claim that the policies are void on account of certain misrepresentations that were given to Underwriters prior to the issuance of the policies. Next, Underwriters assert that the policies themselves are unclear as to whether Trans Ocean was an additional assured or simply a loss payee, and that evidence exists to demonstrate that Trans Ocean should be categorized as the latter in cases of physical damage or loss under the policies. Underwriters further claim that Trans Ocean failed to comply with the notice and claims procedure provisions of the insurance policies, and that the policies do not cover several kinds of losses that are claimed by Trans Ocean.

With regard to Trans Ocean's claim for damages, Underwriters offer that there have been inconsistencies in Trans Ocean's claims of the replacement value of the unreturned equipment, and that the equipment losses and damages simply cannot be determined.

In its Motion for Summary Judgment, Underwriters argue that Trans Ocean cannot recover in this case because of several facts. First, Underwriters assert that there is evidence of non-covered causes of

the alleged damages. Underwriters next claim that some of the containers are not covered by the policy on account of their being subleased. Finally, Underwriters offer that Trans Ocean cannot recover under the policies due to the fact that CAVN was Trans Ocean's agent at the placement of coverage, and CAVN made material misrepresentations to Underwriters in obtaining insurance coverage.

In response to Underwriters' Motion, Trans Ocean asserts that any defenses to the arguably non-covered clauses have been waived by Trans Ocean, and that the Court has already determined that CAVN's non-disclosures do not void the two policies at issue as to Trans Ocean.

## DISCUSSION

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *See id.* However, the non-moving party:

may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Rule 56(e), Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *See id.* at 254–55, 106 S.Ct. 2505.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immate-

rial and requires the court to grant the motion for summary judgment. *See id.*

## II. Status of Trans Ocean

■ As a threshold matter, the Court must evaluate the status of Trans Ocean under the insurance policies at issue. Specifically, the Court must determine whether Trans Ocean is properly labeled an additional assured or a loss payee for property damage or loss.

■ An additional assured party under an insurance policy has all of the rights that are afforded to the named insured and can recover on the policy under its own right. In contrast, a loss payee under an insurance policy is merely a party designated to receive payment should the named insured prevail on its claim. *See* 5A John Alan Appleman, Insurance Law & Practice § 3335 (1979). In other words, a loss payee may recover only to the extent that the named insured may recover.

It is Trans Ocean's claim that the Court is bound by the doctrine of collateral estoppel, in light of the Court's prior decision on this same issue in the *Transamerica* case. As to the issue of whether the doctrine of collateral estoppel is applicable to the instant case, the Court concludes that the matter at issue, namely the status of one of CAVN's lessors under the subject policies, is identical to that which was addressed by the Court in its May 6, 1998 Order in *Transamerica Leasing Inc. v. Institute of London Underwriters.* Accordingly, the Court is obligated to import its prior decision in *Transamerica* into the instant case on the issue of Trans Ocean's status under the subject policies. *See Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1501 (11th Cir.1984); *Stovall v. Price Waterhouse Co.*, 652 F.2d 537, 540 (5th Cir.1981).

In opposition to Trans Ocean's argument for the application of the doctrine of collateral estoppel, Underwriters claim that the circumstances in the instant case differ from those of *Transamerica* quite significantly, highlighting the fact that Trans Ocean's corporate representative conceded that Trans Ocean's intent was to be covered merely as a loss payee—not as an additional assured. However, as the Court determined in *Transamerica*, the plain language of the contract is unambiguous and therefore the contract speaks for itself. *See Transamerica Leasing, Inc. v. Institute of London Underwriters*, 7 F.Supp.2d 1340, 1345–46 (S.D.Fla.1998). Thus, an inquiry into the intent of Trans Ocean's corporate representative would be improper under established principles of contract interpretation.

It is also worth noting that at the time of Underwriters' initial Response to the Motion for Summary Judgment, Underwriters claimed that Trans Ocean had failed to demonstrate that the other requisite element for the application of the doctrine of collateral estoppel existed. Specifically, Underwriters asserted that there had not yet been a final judgment in *Transamerica* and, therefore, the doctrine of collateral estoppel was inapplicable.[1]

As of the date of this Order, however, the Court's rulings in *Transamerica* are final. The case has gone to trial on the issue of damages, and the Court has disposed of post-trial motions seeking the Court to vacate its prior rulings and to grant a new trial. Consequently, the necessary finality exists, and the doctrine of collateral estoppel is properly applied to the instant case.

## III. Alleged Misrepresentations by CAVN and Failure To Disclose by Trans Ocean

Underwriters claim that summary judgment for Trans Ocean is precluded by the

---

**1.** Underwriters directed the Court to *United States v. Horton*, 622 F.2d 144, 148 (5th Cir. 1980), in support of their position that the Court's May 6, 1998 Order on Trans Ocean's Motion for Summary Judgment was insufficient to establish the requisite finality for a finding of *res judicata*.

fact that CAVN made material misrepresentations to Underwriters at the time that the insurance policies at issue were signed, and that Trans Ocean withheld important information relating to CAVN's financial condition. Because of these facts, Underwriters further assert that the policies are unenforceable.

■ With regard to the first issue, namely that CAVN may have withheld critical information from Underwriters, the Court has previously held on virtually identical facts that because leasing companies were additional assureds under the subject policies, possible misconduct on the part of CAVN is irrelevant to the question of whether the leasing companies are entitled to coverage under the subject policies. *See Transamerica Leasing, Inc. v. Institute of London Underwriters*, 7 F.Supp.2d 1340 (S.D.Fla.1998).

■ With regard to the possibility that Trans Ocean has withheld material information relating to the financial condition of CAVN, the Court observes that there are numerous pieces of evidence offered by Trans Ocean, and a similarly persuasive absence of authority offered by Underwriters, to undermine Underwriters' argument that any withholding of information relating to the financial condition of CAVN on the part of Trans Ocean causes the policies to be unenforceable as to Trans Ocean.

To begin, Trans Ocean has identified several pieces of evidence that establish knowledge on the part of Underwriters that CAVN was on tenuous financial ground at the time that the 1994 policy was renewed. Specifically, according to the deposition testimony of Michael Harding, the cargo underwriter for one of Underwriters, Underwriters were aware of CAVN's financial difficulties in January 1994. *See* Harding Dep. 27–30. In addition, Trans Ocean has identified several articles from the prominent daily periodical, *Lloyds List,* which Mr. Harding has testified to having viewed, that indicated CAVN's financial condition was in question

prior to the renewal of the 1994 lease. *See id.* at 24.

As noted by Trans Ocean, an assured need not disclose every detail that has previously been made known to an insurer. *See Mann MacNeal and Steeves, Ltd. v. Capital and Counties Ins. Co.* [1921] 2 KB 300 ("[T]he rule [that an assured disclose material information] is satisfied if [an assured] discloses sufficient to call the attention of the underwriters in such a manner that they can see that if they require further information they ought to ask for it.") (quoting *Asfar & Co. v. Blundell* [1896] 1 QB 123).

In the instant case, it is evident that Underwriters were on notice of the risks of insuring leasing companies that held relationships with CAVN. In particular, it appears that prior to renewing the 1994 policy, Underwriters were aware that one of CAVN's ships had been arrested for non-payment, and that CAVN had failed to satisfy substantial debts. *See id.* at 24–28.

In light of the above discussion, the Court finds that Underwriters were sufficiently on notice of the potential hazards of insuring CAVN and its lessors, and had sufficient information to inquire further into the financial condition of CAVN prior to renewing the 1994 insurance policy.

Accordingly, the Court does not find that Underwriters' argument relating to the failure of Trans Ocean to disclose the true nature of CAVN's financial condition is sufficient to overcome summary judgment for Trans Ocean as to liability.

■ Taking a different route, Underwriters have tried to circumvent a repeat of the Court's decision in the *Transamerica* case on the issue of misrepresentation and failure to disclose by asserting that CAVN was an agent of Trans Ocean during the placement of coverage. In doing so, Underwriters endeavor to have the Court impute CAVN's alleged misrepresentations as an agent to Trans Ocean as principle. The Court finds this argument to be without merit.

In order to establish that an implied principal-agency relationship existed between Trans Ocean and CAVN, Underwriters must identify a representation by Trans Ocean sufficient to allow a third party to conclude that such a relationship exists. *See Mobil Oil Corp. v. Bransford,* 648 So.2d 119, 121 (Fla.1995).

Underwriters have failed to demonstrate any communications with Trans Ocean that would allow a third party reasonably to conclude that a principal-agent relationship existed between Trans Ocean and CAVN. In addition, Underwriters have failed to establish that an actual principal-agent relationship existed between Trans Ocean and CAVN. Specifically, Underwriters point to no evidence that Trans Ocean was in fact in control of the decisions made by CAVN in obtaining insurance. Rather, the evidence available to the Court indicates that CAVN was able to obtain insurance for its lease with Trans Ocean in the manner of its choosing. Thus, the Court cannot conclude that a principal-agency relationship existed between Trans Ocean and CAVN sufficient for alleged misrepresentations or failures to disclose of CAVN to be imputed to Trans Ocean.

## IV. Trans Ocean's Compliance with Notice and Claims Procedures

█ In their Opposition to Trans Ocean's Motion for Summary Judgment, Underwriters assert that Trans Ocean cannot recover under the subject policies on account of Trans Ocean's failure to comply with the notice and claims procedure provisions of the policies by giving "prompt notice" of any accident whereby loss or damage may result.

Trans Ocean responds to this argument by offering that the evidence provided by the parties indicates that Trans Ocean was unable to comply fully with the proper claims procedures on account of the fact that Trans Ocean was not given a copy of cover notes initially, and due to the fact that Underwriters declined coverage before Trans Ocean had a chance to submit the necessary documentation in support of its claim. Furthermore, once Underwriters had refused to pay claims under the policies, Trans Ocean concluded that it had no reason to submit claims—an effort that would appear to have been futile.

The Court finds that Trans Ocean was unable to comply completely with the claims procedures at the point at which Underwriters determined that they would not pay Trans Ocean for its claims. Accordingly, Trans Ocean cannot be penalized for failure to comply fully with the notice and claim procedures of the subject policies. *See, e.g., Nu-Air Mfg. Co. v. Frank B. Hall & Co.,* 822 F.2d 987, 993 (11th Cir.1987).

## V. Losses from Financial Default/Insolvency; Capture, Seizure, Arrest, Restraint, Detention, Confiscation, or Nationalization; and Sublease

█ Underwriters assert that some of Trans Ocean's losses are the result of CAVN's insolvency, and that the policies at issue do not cover losses arising from insolvency. Underwriters further assert that some of Trans Ocean's losses arise from capture, seizure, arrest, restraint, detention, confiscation, and or nationalization, which are also losses that are not covered by the subject policies. Finally, Underwriters claim that some of the lost containers were subleased, and that under the subject policies, containers that are subleased immediately lose their coverage.

In response to these assertions, Trans Ocean offers that Underwriters are estopped from relying upon these defenses for the reason that Underwriters did not offer such defenses in their declination of cover. Rather, Trans Ocean argues that Underwriters are entitled to proceed only on the following defenses: (1) volume of claims; (2) late notification of claims; (3) lack of assistance from CAVN; and (4) failure of CAVN to disclose material facts at renewal. Underwriters did not decline cover based upon the following reasons:

(1) loss due to insolvency; (2) loss due to capture, seizure, arrest, etc.; or (3) the fact that containers had been subleased.

Prior to the trial on damages in the *Transamerica* case, the Court concluded that defenses not raised by Underwriters in the initial denial of coverage, which set forth four specific grounds for denial of coverage, must be excluded from use as new defenses by Underwriters. *See Transamerica Leasing, Inc. v. Institute of London Underwriters*, Case No. 96–2712–CIV–MOORE, Trial Trans. of May 3, 1999, at 4–7. Consistent with the Court's prior decision, it is again the Court's conclusion that it was Underwriters' intent to waive certain defenses that had not been asserted in the denial of coverage.

However, the Court recognizes that without sufficient information, a defendant cannot be held knowingly to have waived a particular defense in an initial denial of coverage. In other words, if an insurer recognizes the applicability of a particular defense based upon evidence uncovered subsequent to an initial denial of coverage, that insurer should not be precluded from using such a defense on the theory that the defense was waived in the initial denial of coverage—particularly where there is no evidence to indicate that an insured relied upon a waiver to its detriment. Thus, the Court must determine whether Underwriters had sufficient information at the time of the initial denial of coverage to have waived the additional defenses presented.

Based upon the evidence presented to the Court, it is clear that Underwriters had knowledge of CAVN's financial condition and were aware of the potential for insolvency. *See* Harding Dep. at 24–30. Furthermore, Underwriters had knowledge that a ship of CAVN had been arrested, and that other leasing companies had begun seeking to retrieve their containers. *See id.* at 28–30. Accordingly, the Court finds that defenses based upon loss from insolvency and seizure have been waived by Underwriters.

As to the defense that Trans Ocean cannot recover for loss of subleased containers, the Court is unable to determine at the summary judgment stage that Underwriters had knowledge that CAVN had subleased containers that had originally been leased from Trans Ocean prior to the point at which Underwriters issued their denial of cover. As a result, the Court cannot conclude that a defense based upon the subleasing of containers by CAVN has been waived, and the question of whether Underwriters had knowledge of subleased containers at the time of their denial of cover remains.

In the event that evidence is presented which establishes that Underwriters were unaware of subleased containers at the time of denial of coverage, then Underwriters shall be entitled to rely upon this defense. However, if it is determined that Underwriters did have knowledge that CAVN had subleased some containers leased from Trans Ocean at the time of the denial of cover, then the Court shall conclude that Underwriters have waived a sublease defense, and Trans Ocean shall be entitled to damages accordingly.

## VI. Damages

As to the issue of the total damages to be awarded to Trans Ocean, Underwriters assert that the precise losses of Trans Ocean are unclear, and for that reason, there is a genuine issue of material fact that remains regarding the amount of Trans Ocean's recoverable damages. The Court agrees. Accordingly, the issue of the extent of Trans Ocean's damages must proceed to trial.

## CONCLUSION

UPON CONSIDERATION of the Motions, Responses, and the pertinent portions of the record, it is hereby

ORDERED AND ADJUDGED that Trans Ocean's Motion for Summary Judgment is GRANTED in part and DENIED in part as follows:

(1) The above-captioned action shall proceed to trial for a determination of the precise amount of damages to which Trans Ocean is entitled; and

(2) The parties are invited to move for summary judgment with additional evidence as to whether Underwriters first became aware of the fact that CAVN had subleased containers that had been leased from Trans Ocean before or after the denial of coverage.

FURTHER ORDERED AND ADJUDGED that Underwriters' Motion for Summary Judgment/Partial Summary Judgments is DENIED.

DONE AND ORDERED.